Taylor, Chief-Justice,
contra. — it is to be collected from the letter of one of the Defendants, read in evidence, that the first proposition made by the Plaintiffs, was, that the Defendants should become purchasers of the cotton ; and that the inducements presented by the Defendants, occasioned the consignment to them, for the purpose of having a sale effected in Baltimore, for the .Plaintiff’s benefit. To say nothing oí the advantage derived to the Defendants from storage at Washington and Tarbovough, and the freight from one place to the other, it cannot be denied, that it was profitable to the Defendants to have their funds in Baltimore, whence they could draw them by a premium on their biils, rather than in Tarborougli: and that they were reluctant to forego this advantage, appears from their having endeavoured to borrow money from the witness Lillie, rather than remove their funds from Baltimore. Up to the time of i,be sale in Baltimore, the interests of both Plaintiffs and Defendants were the same in relation to the cotton 5 11 was important to both parties that a sale should be made, as soon as it could be advanlageously effected. Bui after the sale, the interests of the parties took different directions. The money of Bell & Joiner was deposited where they' most wished it to be, in the hands of the consignees, to serve as a fund on which they could draw as profit presented itself; but the money of the Plaintiffs would have been most usefully employed in being applied to the payment of their debt, and stopping the interest on their bond, .As soon as the, money came into *152 the hands of Sweeting & Sterret, the Defendants should *iave drawn f°r it> or given credit to the amount on the Plaintiff’s bond. The sale must have taken place early in the spring of 1820, and the Plaintiffs had a right to expect from the common course of business, and the usage of that trade, that within a reasonable time after the sale, they should receive the amount in some shape or other, or be apprized that they might draw for it on Baltimore. It is said by a respectable writer, that if the factor have not given notice to his principal of the bargain in convenient time, and the vendee becomes insolvent, the factor is responsible. — Malyn.
The excuse alleged for not giving this .notice, is, that the Defendants could get no account of sales from Sweet-ing & Sterret, and could not therefore tell when tiie sale took place, or what amount they should give credit for. But does it appear from any part of the evidence, that a single effort was made to procure these accounts of sales, until the time when Bell attempted to go to Baltimore, at which period Sweeting & Sterritt were in failing circumstances ? It is not credible, that a house in Baltimore, receiving consignments from Tarborough, should suffer a period of six or seven months to elapse, without apprising their consignor that a sale had taken place $ and as to the other produce shipped by the Defendants to the same house, they knew what sale had been effected, and how much they could draw for. But what seems almost conclusive on this point, is the testimony of Sweeting taken by the Defendants, and in his presence. His silence on the two heads of a sale, and transmitting an account of sales, is to me most expressive. If he had proved that either no sale had been effected, until so short a period before the failure, as to render notice unavailing ; or that though a sale was promptly made, his firm had neglected to send an account of sales to Bell & Joiner, although frequently urged to it, it would have acquitted the Defendants of the main strength of the *153 charge of negligence. Batas he was not interrogated oa points with which he must have been perfectly well acquainted, and which it was so important for the Defendants to maintain, the Jury may probably have inferred from that very circumstance, that the sale was soon made after the arrival of the cotton, and that an account of sales was transmitted to Bell & Joiner in reasonable time. Assuming this to be so from the finding of the J ury upon the evidence exhibited, it appears to be a case of gross negligence on the part of the Defendants, in no degree extenuated by their own loss ; for though they might risque their own funds in Baltimore for the sake of profit and convenience, they had no right so to act in relation to those of the Plaintiffs»
The law has imposed certain obligations on an agent, which are not founded solely upon the reward paid for fus labour, but in part by the confidence inspired by his acceptance of the charge ; and although it is admitted, that the responsibility of a voluntary or gratuitous agent is much inferior to that of a hired agent, yet it is nevertheless tine, that Use former is bound to bring to the] performance of the duty such a degree of care and diligence as may reasonably satisfy the trust reposed in him. This principle is fully recognized in the great case of Caggs and Bernard ; there was no consideration paid for the carriage of the goods, and no action could have been sustained for not carrying them, but because the Defendant undertook to carry them, and they were spoiled by his neglect, ho was made liable ; and Lord Holt says, if a man acts by commission gratis, and in the executing his commission behaves himself negligently he is answerable, This undertaking obliges the undertaker to a diligent management. And so a bare being trusted with another man’s goods, must be taken to be a sufficient consideration, if the bailee once enter upon the trust, and - i.ake ’.he goods into his possession.
*154 The case cited by the Defendants from 1 lien. Black. ^'dainly proves that even in misfeasance in the actual performance of the ns;:!.•s'tolrng, the responsibility of a voluntary agent ir; inferior in degree to that of a hired agent. The latter is bound to possess such a degree of skill as would, in general, bo adequate to the service : a gratuitous agent is not bound to possess such skill, but is only chargeable by proof of gross negligence. Hence the merchant who undertook w ithout any compensation, to enter at the custom-house a parcel of leather of" a particular kind, which being seised, together with a parcel of his own, by reason of the erroneous entry, it was he!*! that he was not answerable for the loss, having acted bona Jide, and to the best of his knowledge. It was said by the Court on that occasion, that if a man he in a situation or profession to imply ;,!* ill, an omission of that skill is imputable to bins as gross negligence. Apply that rule to the case, before «a, and let it bo admitted for the sake ^pf the application, that the Defendants were voluntary ¡•agents, w hat will uetlse result ? That the Defendants uu-fdertook a task for which their situation and profession did imply skill, and therefore the omission to exert it may be considered as gross negligence. A more simple operation scarcely belongs to the duty of a mandatory, than that of transmitting an account of sales, and drawing money out oí the hands of consignees, in lull credit, 'for months after the consignment.
The ease cannot be distinguished in principle from the recent one. of Wilkhmr.i. v. Coverdale, decided in accordance with Coggs v. Bernard. it was there held, that case will lie where a parly undertakes to get a policy done for-another without any consideration, if the party so undertaking takgs any steps for that purpose, but does if, so negligently, that the person has no benefit from it,- — (1 Bsp. C. 75.) in whatever light I can see this case, wheihrr of justice or law, the verdict of the Jury appears lo.be correct, and ought to he supported.